IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NAOISE CONNOLLY RYAN, *et al.*
                              Plaintiffs,

v.

U.S. DEPARTMENT OF JUSTICE,
                              Defendant.

Civil Action No. 1:23-cv-3815 (BAH)

Judge Beryl A. Howell

**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Gregory M. Lipper
LeGrand Law PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 996-0919
glipper@legrandpllc.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

Table of Authorities................................................................................................................................ ii

Introduction ...............................................................................................................................................1

Argument ................................................................................................................................................. 2

    A.   Without a preliminary injunction, the families will suffer irreparable harm. ................... 2

        1.   The government has not committed to producing responsive, non-exempt documents by July 7, 2024. ................................................................................... 2

        2.   The government offers no basis to conclude that the operative deadline is later than July 7, 2024. .......................................................................................3

        3.   Revocation of a deferred-prosecution agreement is exceedingly rare. .......................5

        4.   A *Vaughn* index also is necessary to avoid irreparable harm. .....................................7

    B.   The families are likely to succeed on the merits. ............................................................. 8

        1.   The government offers circular arguments and responds to arguments that the families did not make................................................................................. 8

        2.   The government exaggerates the burden of processing and producing the subset of documents at issue in this motion. ............................................................9

        3.   Even after granting expedited processing, the government invokes its earlier, non-expedited timeline................................................................................. 11

    C.   A preliminary injunction is supported by the public interest and balancing of equities. .................................................................................................................................12

    D.   The Court should hold a hearing................................................................................12

Conclusion................................................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*American Oversight v. U.S. Department of State*,
    414 F. Supp. 3d 182 (D.D.C. 2019) ..................................................................................6, 7

*Black Love Resists in the Rust v. City of Buffalo*,
    334 F.R.D. 23 (W.D.N.Y. 2019) ...........................................................................................10

*Brennan Center for Justice v. Department of Commerce*,
    498 F. Supp. 3d 87 (D.D.C. 2020) ........................................................................................ 8

*Church of Scientology of California v. IRS*,
    792 F.2d 146 (D.C. Cir. 1986) .............................................................................................10

*Doe No. 1 v. United States*,
    749 F.3d 999 (11th Cir. 2014) ............................................................................................... 7

*Electronic Privacy Information Center v. Department of Justice*,
    416 F. Supp. 2d 30 (D.D.C. 2016) ....................................................................................... 11

*FCC v. AT&T Inc.*,
    562 U.S. 397 (2011) .............................................................................................................. 8

*National Day Laborer Organizing Network v. U.S. Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012) .................................................................. 11

*United States v. Boeing Co.*,
    617 F. Supp. 3d 502 (N.D. Tex. 2023) .................................................................................. 4

*United States v. Boeing Co.*,
    No. 4:21-CR-5-O, slip op. (N.D. Tex. Aug. 2, 2022) ........................................................... 4

*United States v. Boeing Co.*,
    No. 4:21-CR-5-O, slip op. (N.D. Tex. Jan. 19, 2023) ........................................................... 5

**Other Authorities**

Sydney Ember & Mark Walker, *Alaska Airlines 737 May Have Left Boeing Factory Missing Bolts, N.T.S.B. Says*, N.Y. Times (Feb. 6, 2024), http://tinyurl.com/2h6r6hc9 ...................12

Brandon L. Garrett, *Declining Corporate Prosecutions*,
    110 Am. Crim. L. Rev. 109 (2020) ....................................................................................... 6

Public Citizen, *Soft on Corporate Crime: DOJ Refuses to Prosecute Corporate Lawbreakers, Fails to Deter Repeat Offenders* (2019), https://perma.cc/8CU7-S8GR ...............................5, 6

## INTRODUCTION

Most of the government's opposition addresses argument that the families did not make, or circumstances that this case does not present. More generally, the government's subtext is that preliminary injunctions are never appropriate in FOIA cases. *See, e.g.*, Opp. 9 ("Such mandatory injunctions are disfavored as a general matter—and should not be issued except in truly extraordinary circumstances, which FOIA requests rarely if ever pose."); *id.* at 11 ("Courts in this district routinely deny requests for preliminary injunctions in FOIA cases."); *id.* 13 ("Putting aside the many good reasons to deny preliminary injunctive relief in a FOIA case . . . ."). But that is not the law, especially given the circumstances of this case. Here, the families have met the preliminary-injunction requirements, and the government's opposition only reinforces the need for prompt relief.

First, the government's opposition all but admits that, absent a preliminary injunction, the families will not receive responsive, non-exempt documents—not even the discrete subset at issue here—in time to use them to oppose the July 7 motion to dismiss the criminal charge against Boeing. The government attempts to elongate the schedule in the criminal case, but the applicable local rules and the case's procedural history demonstrate that the schedule will be especially tight.

Second, the families have demonstrated that they are likely to succeed on the merits. In arguing otherwise, the government focuses largely on arguments that the families did not make. And the government rests on a conclusory sentence that it is impossible to process and produce a discrete subset of documents sooner than the others—a conclusory sentence that does not account for standard, modern tools used to process electronic documents.

Finally, the government's public-interest and equities analysis overlooks the cases—which hold that an imminent litigation deadline alters the usual balance, and justifies faster processing of the movant's request. The government likewise ignores the public interest in full, thorough adjudication of criminal cases, especially when those cases involve events as significant as the crashes of the Boeing 737 Max.

## ARGUMENT

### A.  Without a preliminary injunction, the families will suffer irreparable harm.

The government fails to rebut the families' showing of irreparable harm. If anything, the opposition reinforces the need for a preliminary injunction to prevent "imminent irreparable harm based on an actual, impending deadline." Opp. 12.

> 1.  *The government has not committed to producing responsive, non-exempt documents by July 7, 2024.*

To begin, the government misunderstands DOJ's deadline for moving to dismiss the criminal case. The government says that July 7, 2024 is "the earliest date that the Government may possibly file a motion to dismiss in the Boeing prosecution." Opp. 20. But if DOJ concludes that Boeing complied with the DPA, then July 7 also is the latest date that the government may possibly file a motion to dismiss. *See* Boeing DPA ¶ 25 ("Six months after the Agreement's expiration, the Fraud Section shall seek dismissal with prejudice of the Information filed against the Company . . . .").

Yet the government has not committed to producing any responsive, non-exempt documents—not even the subset of documents at issue in this motion—in time for the families to use them to oppose such a motion. At best, the government "estimates that it will complete its searches for responsive records by April 1, 2024" and then "make its initial disclosure

2

determination within sixty days after the searches are completed"—"by approximately June 1, 2024." Opp. 16–17. Even if the interim disclosure determination is made by June 1, as the government currently estimates, that determination alone will not put any documents in the families' hands. The government has not estimated any deadline before July 7—let alone committed to one—for even the subset of responsive, non-exempt documents to actually be produced.

> 2. *The government offers no basis to conclude that the operative deadline is later than July 7, 2024.*

Instead of committing to producing documents by July 7, the government speculates that "the timeline for any motion to dismiss in the Boeing prosecution will likely extend far beyond the July 7, 2024, date." Opp. 21. There is no basis for the government's speculation, which the criminal case's history affirmatively refutes.

For one, the government overlooks the tight briefing deadlines that will be triggered by the July 7 dismissal motion. The government predicts that if the Justice Department moves to dismiss, "several parties would file additional briefing concerning the merits of that motion—including Boeing, Plaintiffs, and other interested victims." Opp. 20. But those responses, including the families' response, "must be filed within 14 days from the date the motion is filed." N.D. Tex. Crim. R. 47.1(e). If the families have not received the key documents by July 7, they will have scant opportunity to review them and rely on them in the opposition brief that must be filed two weeks later.

This written response deadline will be no less important if, as the government "expects," the district court "hold[s] a hearing on that motion." Opp. 20. If the families are unable to present the necessary documents in their written brief, they are unlikely to have the opportunity

3

to introduce those documents later on. For one, a brief is "required" to oppose a motion to dismiss. N.D. Tex. Crim. R. 47.1(h). That opposition brief must include "the responding party's contentions of fact." N.D. Tex. Crim. R. 47.1(e). The families will be unable to present their complete factual contentions without the documents establishing those facts.

Indeed, before deciding whether to hold an evidentiary hearing to determine whether Boeing's crime had proximately caused the deaths of the 346 victims, the district court first considered the families' written "proffer of facts they could prove at at the hearing, including expert testimony." *United States v. Boeing Co.*, 617 F. Supp. 3d 502, 514 (N.D. Tex. 2023). A hearing was held only because the families had "proffered evidence that may establish [the required] causation, but they ha[d] not yet had an opportunity to develop the record with that evidence." *Id.* at 515. As this procedural history illustrates, if the families have not received the documents in time to use them in their opposition brief, they are unlikely to be able to introduce them at any hearing.

Even if the district court agrees to schedule a hearing, that hearing is unlikely to extend the schedule by more than a few days. Again, the criminal case's history reveals how quickly events proceed. Initially, the district court ordered the CVRA causation hearing to take place just twelve days after the court's order. *See id.* at 516 (7/27/22 order scheduling hearing "to take place on August 8, 2022") (emphasis omitted). When the families moved to continue that hearing because certain witnesses had scheduling conflicts, the court decided to begin the hearing even earlier; in an order dated August 2, 2022, the court ordered the hearing to begin on August 5. *See United States v. Boeing Co.*, No. 4:21-CR-5-O, slip op. at 1 (N.D. Tex. Aug. 2, 2022). Similarly, upon granting the families' motion to have Boeing arraigned, the court not only ordered that the

4

arraignment would take place seven days later, but also gave the families—who live all over the world—only four days to submit the required written notice of their intention to attend. *See United States v. Boeing Co.*, No. 4:21-CR-5-O, slip op. at 4–5 (N.D. Tex. Jan. 19, 2023).

Finally, the CVRA itself limits the district court's power to pause the criminal proceedings. The CVRA provides, yet the government does not acknowledge, that "[i]n no event shall proceedings be stayed or subject to a continuance of more than five days." 18 U.S.C. § 3771(d)(3). This imposes yet more time constraints on what is already a narrow window for the families to oppose dismissal.

3. *Revocation of a deferred-prosecution agreement is exceedingly rare.*

The urgency created by the July 7 deadline is not alleviated by the slim chance that the government will revoke the DPA. In theory, "the Government need not move to dismiss this case by [ July 7] if the Government concludes that Boeing has not complied with the Deferred Prosecution Agreement." Opp. 19. In practice, corporate deferred-prosecution agreements are rarely extended, let alone revoked. As of 2019, the Justice Department had entered into 298 non-prosecution and 237 deferred-prosecution agreements with corporations. *See* Public Citizen, *Soft on Corporate Crime: DOJ Refuses to Prosecute Corporate Lawbreakers, Fails to Deter Repeat Offenders* 5 (2019), https://perma.cc/8CU7-S8GR (*Corporate Crime*) (analyzing data from Duke Univ. School of Law et al., *Corporate Prosecution Registry*, https://corporate-prosecution-registry.com). Of those 535 agreements, only seven were extended or revoked due to the corporate defendant's noncompliance. *Id.*

DOJ rarely revokes deferred-prosecution agreements even after learning that the corporate defendant has committed new crimes during the term of the agreement. According to the 2019 study, twelve corporate defendants received the full benefit of their original NPAs or

5

DPAs even though they "were subject to subsequent to federal criminal enforcement *before the expiration* of [that original] NPA or DPA." *Id.* (emphasis in original). Several others received the full benefit of their original NPA or DPA but later had enforcement action brought against them for crimes that the corporation had allegedly committed during the term of their original NPA or DPA—including six cases in which "the subsequent DOJ enforcement followed the conclusion of an NPA or DPA's term by weeks or months. *See id.* at 39 (parenthetical examples omitted). In each of these 21 cases, "DOJ did not hold the corporation accountable for apparent breaches." *Id.* at 5; *see also, e.g.*, *id.* at 32–44 (further detailing these examples).

Revocation is especially unlikely here because the DPA did not subject Boeing to oversight by a special monitor. As a result, it is even more difficult for DOJ to identify violations of the agreement; "[a]bsent a monitor, prosecutors must depend on the corporation's own representations as to its improved compliance." Brandon L. Garrett, *Declining Corporate Prosecutions*, 110 Am. Crim. L. Rev. 109, 127 (2020) (footnote references omitted).

Although the families must satisfy their burden to show irreparable harm, they are not required to eliminate every conceivable possibility, no matter how unlikely. *See, e.g.*, *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 186–87 (D.D.C. 2019) (FOIA plaintiffs established likelihood of irreparable harm because, even without ironclad deadline, "congressional leaders expect" impeachment inquiry to end by Christmas and Congress "may not get" the documents in response to its subpoenas to the White House). And the government's argument would necessarily require the families to wait until it is too late: If the families may not pursue preliminary injunctive relief until July 7, they necessarily would not receive the documents in time to use to oppose the government's motion that must be filed by July 7.

  *4. A Vaughn index also is necessary to avoid irreparable harm.*

  Given the July 7 deadline and the government's apparent intent to assert broad exemptions over communications with third-party, non-government adversaries, a *Vaughn* index is likewise necessary to prevent irreparable harm. DOJ's declaration states that "it is likely that the records may be exempt from disclosure pursuant to FOIA Exemption (7)(A), which concerns records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with law enforcement proceedings." O'Keefe Decl. ¶ 21. The government further contemplates "a document-by-document review of returned records" and assertion of other exemptions, "including FOIA Exemptions 6 and 7(C), which protect from disclosure records or information the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties." *Id.* These statements reinforce that without a prompt *Vaughn* index, the families will have no meaningful opportunity to challenge these invocations in time to use non-exempt documents to oppose the July 7 dismissal motion.

  Again, the government offers no explanation for its broad exemption claims over communications with third-party lawyers representing a third-party company. *Cf. Am. Oversight*, 414 F. Supp. 2d at 187 ("Other[ documents], however, would not appear to be subject to any FOIA exemptions. This is especially true for communications between Department officials and Mr. Giuliani, who is not a government employee."). As detailed in our motion, the Justice Department produced a similar category of documents, from the plea negotiations with Jeffrey Epstein, to the victims of Epstein's crimes. *See* Mot. 21–22. Ultimately, "a prosecutor and target of a criminal investigation do not enjoy a relationship of confidence and trust when they negotiate." *Doe No. 1 v. United States*, 749 F.3d 999, 1009 (11th Cir. 2014). The government's

7

vague invocation of Exemption 7(C) is especially curious, because Boeing is a corporation and the exemption for law-enforcement information "on the ground that it would constitute an unwarranted invasion of personal privacy does not extend to corporations." *FCC v. AT&T Inc.*, 562 U.S. 397, 409–10 (2011).

While the merits of the exemption claims need not be resolved as part of this preliminary-injunction briefing, the government's apparent intent to invoke broad exemptions—even as to prosecutors' communications with adversarial third-party corporations—reinforces that the families are likely to experience irreparable harm without a prompt process for reviewing and challenging DOJ's exemption claims. As in other cases, then, the preliminary injunction should require the government to promptly produce a *Vaughn* index so that the families can "make use of the records" by their deadline. *Brennan Ctr. for Just. v. Dep't of Com.*, 498 F. Supp. 3d 87, 92 (D.D.C. 2020).

### B. The families are likely to succeed on the merits.

#### 1. *The government offers circular arguments and responds to arguments that the families did not make.*

When addressing the likelihood of success on the merits, the government begins with the circular argument that the families "cannot show that they are likely to succeed on the merits of their claim, because they have not put forth any authority entitling them to jump the line and obtain immediate processing of their FOIA Request and production of responsive records ahead of all other requests that have been previously granted expedited processing." Opp. 13. This is another way of saying that "the families are not entitled to a preliminary injunction because a preliminary injunction would get them faster relief." A preliminary injunction necessarily grants the movant faster relief than would otherwise be available, and preliminary injunctions are

granted in FOIA cases if the plaintiff makes the required showing. *See* Mot. 19, 22–26 (collecting cases).

The government also emphatically and repeatedly targets an argument that we did not make. On the first page of its response, the government insists that the families' "legal claims are nothing more than a complaint that more than twenty days has passed since the submission of their FOIA request, for which the remedy is constructive exhaustion of administrative remedies and the opportunity for court supervision of the processing and production." Opp. 1. Other movants may have made this argument, but the families did not. *See, e.g.*, Mot. 23–26 (discussing relationship between statutory deadlines and administrative exhaustion and then identifying several specific reasons—unrelated to the 20- or 30-day statutory deadlines—why the Criminal Division's response has been untimely). Still, the government attacks this straw man. *See, e.g.*. Opp. 11 ("In particular, an agency's failure to respond to a FOIA request within twenty business days . . . does not entitle a requester to a production timetable or processing rate of his choosing."); *id.* at 14 ("As an initial matter, Plaintiffs cannot show entitled to production of records just because Defendant has not responded to the request within the typical twenty-day statutory timeframe for responding to a request."); *id.* at 15 ("Nor can Plaintiffs establish that they are entitled to all processing and production of certain responsive records within thirty days of any court order because it has already been granted expedited processing by the Department.").

    2. *The government exaggerates the burden of processing and producing the subset of documents at issue in this motion.*

Meanwhile, the government fails to analyze the relief that the families actually request: Only seven of the 34 categories of documents originally requested. Because the families seek

9

preliminary relief over only a subset of documents, they are not trying to "short circuit the litigation process and obtain [the] full relief [they seek] on the merits." Opp. 10.

More fundamentally, the government exaggerates the amount of time necessary to process and produce the documents at issue in this motion. *See, e.g.*, Opp. 16 (arguing that the underlying FOIA request seeks "nearly three dozen different categories of records"). Without explanation, the government claims that it would "not be possible for the Criminal Division to separate, in such a short time frame, the records responsive to certain portions of Plaintiffs' FOIA Request from the entire corpus of records returned from searches." Opp. 10 (citing O'Keefe Decl. ¶ 28). The government fails to elaborate. It fails to do even the minimum, such as to "describe at least generally the structure of the agency's file system which makes further search difficult." *Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986).

What is more, the government's vague and conclusory claim appears to ignore modern methods of storing, organizing, and retrieving electronic documents using date ranges, sender and recipient metadata, search terms, and other standard techniques. Digital metadata—including fields such as "to, from, date sent, and date received"—"makes electronic documents more functional because it significantly improves a party's ability to access, search, and sort large numbers of documents efficiently." *Black Love Resists in the Rust v. City of Buffalo*, 334 F.R.D. 23, 28 (W.D.N.Y. 2019) (alterations and quotation marks omitted). The subset of documents at issue in this motion appears to be especially amenable to separation from the larger set. They are only a few years old. Six of the seven categories form a discrete set of documents—"Discussions with Boeing's Attorneys"—involving prosecutors' communications with non-government lawyers, most or all of whom practiced at a single law firm with an easily identifiable email domain.

10

What was clear last decade is even clearer today: When responding to FOIA requests, government agencies "must learn to use twenty-first century technologies to effectuate congressional intent." *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 111 (S.D.N.Y. 2012). Given these standard technologies, the government's conclusory claim does not explain why the government cannot promptly identify and produce this discrete subset.

    3. *Even after granting expedited processing, the government invokes its earlier, non-expedited timeline.*

In addition to focusing on the full set of FOIA requests, rather than the narrower subset at issue in this motion, the government points to its pre-expedition timing estimates—without explaining why expedited processing has not sped up this timeline. The timeline identified in the opposition, the government observes, "is consistent with the timeline the Criminal Division estimated in February 2023." Opp. 16–17. But when it offered that timeline in February 2023, the Criminal Division had not yet granted expedited processing to the families' request; at a minimum, the expedited timeline should be faster than the timeline offered before the request was expedited.

The families appreciate that the Criminal Division has "acknowledged th[at] expedited processing was warranted." *Id.* at 17. But its acknowledgement does not appear to have changed the timeline. Although Congress may have "opted not to impose a specific deadline on agencies processing expedited requests," its "intent was to give the request priority for processing more quickly than otherwise would occur." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 39 (D.D.C. 2016) (quoting S. Rep. No. 104-272, at 17 (1996)) (emphasis and quotation marks

11

omitted). That has not happened here—not with the full set of requests, and especially not with the narrower subset at issue in this motion.

### C. A preliminary injunction is supported by the public interest and balancing of equities.

As for the public interest and balancing of equities, the government fails to address the specific factors identified in our motion. Perhaps most importantly, and as courts in this district have recognized, the imminent litigation deadline—in a criminal case of unusual public interest and importance—overrides the government's concerns (Opp. 22–23) about allowing one requester to move ahead in line or otherwise taxing agency resources. *See* Mot. 26 (citing cases). In any event, the government exaggerates these burdens, as well as burden of redactions, given that the families' motion seeks relief as to only a subset of their underlying motion and most of this subset involves communications with an adversarial third party representing a corporate defendant.

Finally, and also as detailed in the motion (*id.* at 27), it is especially important that Boeing's DPA receive proper scrutiny, given that a recent safety failure "raises fresh questions about whether the company did enough to improve safety after two fatal crashes of 737 Max 8 planes in 2018 and 2019." Sydney Ember & Mark Walker, *Alaska Airlines 737 May Have Left Boeing Factory Missing Bolts, N.T.S.B. Says*, N.Y. Times (Feb. 6, 2024), http://tinyurl.com/2h6r6hc9.

### D. The Court should hold a hearing.

The families renew their request for a prompt hearing on their motion. In particular, the government's opposition depends on several assumptions—including about the timing of the criminal proceedings, the ability to perform targeted searches on a subset of documents—on

which the government has not elaborated. A hearing would enable the parties and the Court to address these specific issues, which are likely to be critical to the preliminary-injunction analysis.

## CONCLUSION

The Court should grant the motion and enter a preliminary injunction requiring DOJ, within 30 days of the Court's order, to (1) process and produce documents responsive to categories 6–11 and 30 of the families' FOIA request, and (2) provide the families a *Vaughn* index listing the documents withheld or redacted and the basis for withholding or redacting them.

Respectfully submitted,

/s/ Gregory M. Lipper
Gregory M. Lipper (Bar No. 494882)
LeGrand Law PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 996-0919
glipper@legrandpllc.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

On February 23, 2024, I served this reply on all counsel through the Court's electronic-filing system.

/s/ Gregory M. Lipper
Gregory M. Lipper
