**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NAOISE CONNOLLY RYAN, *et al.*,<br>*Plaintiffs*,<br>v.<br>DEPARTMENT OF JUSTICE,<br>*Defendant*. | Civil Action No. 23-3815 (SLS)<br>Judge Sparkle L. Sooknanan |

# MEMORANDUM OPINION

In October 2018, a Boeing 737 MAX aircraft crashed shortly after takeoff in Indonesia. Less than six months later, another Boeing 737 MAX aircraft crashed in Ethiopia. Tragically, none of the 346 people onboard the planes survived. After investigating the crashes, the Department of Justice (DOJ) entered a deferred prosecution agreement with Boeing, which many of the victims' families opposed. In 2022, 15 family representatives of the crash victims and their counsel submitted a Freedom of Information Act (FOIA) request to DOJ's Criminal Division. They requested a range of records related to the aircraft crashes and subsequent investigations. Having received no response for over a year, the Plaintiffs sued to compel DOJ to produce the requested records. To efficiently move the case forward, the Parties agreed that DOJ would process a random sample of a subset of the potentially responsive documents. DOJ withheld most of the documents under FOIA Exemptions 3, 4, 6, 7(A), and 7(C). The Parties now cross-move for summary judgment regarding the applicability of those exemptions. The Court grants in part and denies in part both motions.

## BACKGROUND

### A. Statutory Background

"FOIA 'implements a general philosophy of full agency disclosure.'" *Informed Consent Action Network (ICAN) v. NIH*, No. 23-cv-926, 2026 WL 585104, at *1 (D.D.C. Mar. 3, 2026) (quoting *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989) (cleaned up)). The statute "requires every federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)). "Agencies must construe FOIA requests liberally and can only withhold or redact documents if the information requested 'falls within one of nine statutory exemptions.'" *ICAN*, 2026 WL 585104, at *1 (quoting *People for the Ethical Treatment of Animals (PETA) v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014)); *see* 5 U.S.C. § 552(b)(1)–(9). "These exemptions demonstrate that the public's right to information is 'not absolute and that disclosure of certain information may harm legitimate governmental or private interests.'" *Am. Ctr. for L. & Just. v. FBI*, No. 22-cv-3711, 2026 WL 1585366, at *1 (D.D.C. June 3, 2026) (quoting *Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) (quotations omitted). The agency bears the burden of establishing that an exemption applies and ordinarily "must disclose all reasonably segregable, nonexempt portions of the requested record(s)." *PETA*, 745 F.3d at 540 (cleaned up).

### B. Factual and Procedural Background

The Court draws the facts from the Defendant's Statement of Material Facts and the underlying materials referenced in that statement. *See* Def.'s Statement of Undisputed Facts (DSOF), ECF No. 35–1. The Court assumes the facts in that statement to be true unless they have

been specifically disputed, and it assumes the truth of other undisputed statements in the record. *See* Fed. R. Civ. P. 56(e)(2); *see also* LCvR 7(h)(1).[1]

In October 2018, a Boeing 737 MAX crashed in Indonesia, killing 189 people. Compl. ¶ 2, ECF No. 1. Five months later, another Boeing 737 MAX crashed in Ethiopia, killing 157 people. *Id.* DOJ then criminally investigated Boeing and reached a deferred prosecution agreement with the company in January 2021. *See United States v. Boeing Co.*, 655 F. Supp. 3d 519, 524–26 (N.D. Tex. 2023) (explaining the case's timeline). Three years later, the government revoked the Boeing deferred prosecution agreement after breaches by Boeing, before executing a new non-prosecution agreement. *See United States v. Boeing Co.,* No. 4:21-CR-5, 2025 WL 3095958, at *1 (N.D. Tex. Nov. 6, 2025) (providing further context); Herrington Decl. ¶ 31–34, ECF No. 35-2 (describing the terms of the agreement).

The Plaintiffs in this case are 15 family representatives of the crash victims and their counsel. Compl. ¶ 11–26. In 2022, the Plaintiffs submitted a FOIA request to DOJ's Criminal Division requesting a range of records related to the aircraft crashes and subsequent investigations. ECF No. 1-1. The Plaintiffs filed this case in December 2023, alleging that DOJ had failed to produce documents responsive to their request. Compl. ¶¶ 71–87.

---

[1] Here, neither party filed a separate statement in opposing the respective motions. *See* Def.'s Resp. and Cross-Mot. Summ. J. (Cross-Mot.), ECF No. 35; Pls.' Reply, ECF No. 38. In part, this is because the Parties dispute whether the Plaintiffs' self-titled "Statement of Facts" included in their Motion for Summary Judgment, Pls.' Mot. Summ. J., ECF No. 34, satisfies the requirement that "[e]ach motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue[.]" LCvR 7(h)(1). Regardless, Local Rule 7(h) provides that "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). Accordingly, the Court will reference the Defendant's Statement of Undisputed Facts. Further, when the Plaintiffs' factual assertions are not covered in the Defendant's Statement but supported by record evidence, the Court will accept them as uncontroverted. *See Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 579 F. Supp. 2d 89, 92 n.2 (D.D.C. 2008).

The Plaintiffs eventually narrowed their request. *See* Joint Status Report ¶ 4, ECF No. 24. Specifically, the Plaintiffs now seek records related to conversations between Boeing and DOJ about the criminal investigation, subsequent negotiations between DOJ and Boeing, and the Boeing deferred prosecution agreement that the Plaintiffs opposed. *See* ECF No. 24; Compl. ¶¶ 55–65. In February 2025, the Parties agreed that the Department would process an agreed-upon random sample of 232 total responsive records. DSOF ¶ 5–6. Of the 232 total records, 46 records were responsive to the narrowed scope of the Plaintiffs' request. Herrington Decl. ¶ 8, ECF No. 35-2. Of that subset, the Department released 150 pages to the Plaintiffs in part. DSOF ¶ 10. The Department withheld 36 records (comprising 1,597 pages) in full. DSOF ¶ 11.

The current dispute focuses on the applicability of certain FOIA exemptions to those withholdings.[2] Of the pages released in part, DOJ invoked Exemptions 6 and 7(C) to redact privacy information, DSOF ¶ 17–19, and Exemption 4 to redact confidential commercial information, DSOF ¶ 14–16. In addition to its partial withholdings, DOJ invoked multiple overlapping exemptions to withhold 36 records in full. First, the Department withheld 30 records in full pursuant to Exemption 3, alleging that they consist of grand jury materials. DSOF ¶ 12. They also alleged that these documents were exempt, either in full or in part, under Exemptions 4 (for containing confidential commercial information) and 7(A) (for containing information compiled

[2] Because of a disagreement over the *Vaughn* indices, the Parties' accounting of the withheld records varies. Throughout its cross-motion, DOJ repeatedly faults the Plaintiffs for attaching a "draft" *Vaughn* index to their motion for summary judgment, alleging that it provided this draft to the Plaintiffs only in the context of settlement negotiations. *E.g.*, Cross-Mot. 4–6. Therefore, DOJ attached its own "final" *Vaughn* index to its cross-motion, which covers only records withheld in full. ECF 35–2. Given the history of this case, DOJ's complaints have no force and border on bad faith. At status conferences before this Court, DOJ agreed to provide a draft *Vaughn* index precisely so that the Plaintiffs could move for summary judgment. Indeed, the Parties agreed that the Plaintiffs would move first, and it would have been impossible to do so without a *Vaughn* index. In any case, for the purpose of the pending motions, the Court discerns only minimal differences between the "draft" and "final" *Vaughn* indices. ECF 35-2.

for law enforcement purposes). DSOF ¶ 20. Next, DOJ withheld the remaining six documents in full, also pursuant to Exemptions 4 and 7(A). DSOF ¶ 14; Herrington Decl. ¶ 9. Additionally, DOJ withheld one document (Document 4) in full pursuant to Exemptions 6 and 7(C) because it contained the personnel file of a Boeing employee.[3] DSOF ¶ 17. Finally, DOJ asserted that all 36 of the records withheld in full had underlying redactions under Exemptions 6 and 7(C) because they contained employees' personal identifying information. DSOF ¶ 18.

In May 2026, the Plaintiffs moved for summary judgment challenging DOJ's invocation of FOIA Exemptions 3, 4, 6, 7(A), and 7(C). Pls.' Mot. Summ. J., ECF No. 34. The Department then cross-moved for summary judgment. Def.'s Resp. and Cross-Mot. Summ. J., (Cross-Mot.), ECF No. 35. Both motions are now ripe for review. *See* Pls.' Reply, ECF No. 38.[4]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA suit, an agency is entitled to summary judgment if it establishes that "no material facts are in dispute" and that all information subject to a request has either "been produced or is wholly exempt from the Act's inspection requirements." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.3d 339, 352 (D.C. Cir. 1978)). Typically, an "agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions."

---

[3] The "draft" *Vaughn* index also indicates that Document 11 was withheld in full pursuant to Exemptions 6 and 7(C). ECF 34–6. However, as DOJ explains, Document 11 is duplicative of Document 4 and was therefore removed from the "final" *Vaughn* index. Cross-Mot. 6 n.3; Herrington Decl. ¶ 8. The Plaintiffs do not seem to challenge this account. *See* Reply, ECF No. 38.

[4] Even though it cross-moved for summary judgment when opposing the Plaintiffs' motion, DOJ opted not to file a reply brief responding to the Plaintiffs' last brief.

*Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).

## DISCUSSION

The Parties contest the applicability of FOIA Exemptions 3, 4, 6, 7(A), and 7(C) to an overlapping array of records. The Court considers the application of each exemption in turn.[5]

### A. Exemption 3

DOJ invoked Exemption 3 to withhold three categories of documents: (1) grand jury subpoenas, (2) responses to those subpoenas, and (3) other records intended to demonstrate Boeing's legal compliance. Cross-Mot. 5–6; Herrington Decl. ¶ 15. The Plaintiffs argue that DOJ has not met its burden of demonstrating that these records are exempt. Reply 4–6. The Court finds that some—but not all—of these records were properly withheld.

Exemption 3 permits the government to withhold records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Here, DOJ points to Federal Rule of Criminal

---

[5] DOJ contends that "the adequacy of [its] search is not at issue in this litigation and judgment on that issue should be granted to [DOJ]." Cross-Mot. 3. This argument entirely ignores the procedural posture of this case. This case is almost three years old. The Parties spent years discussing search parameters and narrowing—ultimately agreeing that DOJ would pull and process a random sample of responsive records and provide a *Vaughn* index so that the Parties could preliminarily litigate exemptions to move this case forward. The instant summary judgment proceedings are solely about that.

Procedure 6(e) as the relevant statute, which prohibits disclosure of certain "matters occurring before [a] grand jury." Fed. R. Crim. P. 6(e). The D.C. Circuit has confirmed that Rule 6(e) "counts as a statute for the purposes of Exemption 3[.]" *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1113 (D.C. Cir. 2007). As a result, certain grand jury materials may not be disclosed even in response to an otherwise valid FOIA request. *See Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867–68 (D.C. Cir. 1981). That said, Rule 6(e) does not "draw 'a veil of secrecy . . . over all matters occurring in the world that happen to be investigated by a grand jury.'" *Senate of P.R. v. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987) (quoting *SEC v. Dresser Indus. Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)). Put differently, "[t]here is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers[.]" *Senate of P.R.*, 823 F.2d at 582. Rather, the question is whether disclosure would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Id.*

In this case, DOJ invoked Rule 6(e) to exempt "grand jury subpoenas for documents or testimony or responses to those subpoenas, including the production of records by Boeing." Herrington Decl. ¶ 15. They also withheld other records, such as presentations by Boeing "to demonstrate compliance with federal law to prevent indictment." *Id.* DOJ argues that this information would "shed light upon how the grand jury went about its work" and "reveal information concerning strategies behind the grand jury investigation." Cross-Mot. 5 (quotations omitted). Therefore, the Court considers the application of Rule 6(e) to three categories of records: (1) grand jury subpoenas, (2) responses to those subpoenas, and (3) other records intended to demonstrate legal compliance. *See Lopez v. DOJ*, 393 F.3d 1345, 1349 (D.C. Cir. 2005)

(encouraging a categorical approach to the Exemption 3 analysis and explaining that courts "need not evaluate the revelatory characteristics of every individual document in each case before it").

*First*, DOJ withheld grand jury subpoenas for documents or testimony. The Court agrees that DOJ properly withheld these records. The D.C. Circuit has categorically stated that "[a]ll grand jury subpoenas (be they *ad testificandum* or *duces tecum*) . . . fall within FOIA's third exemption." *Id.* at 1350. The Plaintiffs do not seriously contest this. Reply 4–6 (focusing on whether DOJ has demonstrated that all the withheld material would undermine grand jury secrecy).

*Second*, DOJ claims Exemption 3 coverage over certain responses to grand jury subpoenas. But on this record, DOJ may not withhold those documents. As the D.C. Circuit has explained, "[t]he mere fact the documents were subpoenaed fails to justify withholding under Rule 6(e)." *Labow v. DOJ*, 831 F.3d 523, 530 (D.C. Cir. 2016). This is because "[t]he disclosure of information 'coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury' is not prohibited." *Senate of P.R.*, 823 F.2d at 582 (quoting *Fund for Const. Gov't*, 656 F.2d at 870). Here, the government offers only that disclosure "could reveal information concerning strategies behind the grand jury investigation." Herrington Decl. ¶ 16. But without more, this conclusory statement is insufficient. *See Labow*, 831 F.3d at 530 (criticizing a similarly conclusory statement in a government declaration); *Senate of P.R.*, 823 F.2d at 584 (requiring "some affirmative demonstration of a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation"). In fact, DOJ admits that it never undertook a line-by-line review of these documents, marking them as exempt simply because they were "collected and/or utilized for purposes of a grand jury proceeding." Herrington Decl. ¶ 38. The Department may not broadly withhold documents solely because they were somehow related to a grand jury proceeding. *See Bagwell v. DOJ*, No. 15-cv-

00531, 2015 WL 9272836, at *4 (D.D.C. Dec. 18, 2015) (explaining that unless the government makes an affirmative demonstration, it "cannot rely on Exemption (b)(3) to shield from disclosure everything it considers to be in some way 'related' to the grand jury's proceedings").

To be clear, responses to grand jury subpoenas may properly be withheld held under Exemption 3. For example, responses could reveal the contents of the subpoena itself, *see Lopez*, 393 F.3d at 1350, or include protected information such as the "identities of witnesses or jurors," *Dresser*, 628 F.2d at 1382. But DOJ entirely fails to "suppl[y] the information a court must have in order to intelligently make that judgment." *Senate of P.R.*, 823 F.2d at 584. And almost three years into this case, when processing only a small sample of documents to enable the Court to narrow the disputes between the Parties, DOJ's decision to proceed in this manner is disappointing.

*Third*, DOJ seeks to broadly shield other records, including Boeing's presentations and communications intended to demonstrate its compliance with federal law or the Boeing deferred prosecution agreement. Once again, DOJ has not shown how these documents would tend to "elucidate the inner workings of the grand jury[.]" *Senate of P.R.*, 823 F.2d at 582. As the D.C. Circuit has emphasized in a similar case, it is "necessary to differentiate between statements by a prosecutor's office with respect to its own investigation, and statements by a prosecutor's office with respect to a *grand jury*'s investigation[.]" *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1002 (D.C. Cir. 1999); *see also In re Grand Jury Subpoena*, 920 F.2d 235, 242 (4th Cir. 1990) ("[I]nformation produced by criminal investigations paralleling grand jury investigations does not constitute matters 'occurring before the grand jury' if the parallel investigation was truly independent of the grand jury proceedings."). Boeing's compliance with federal law and the deferred prosecution agreement may have implications for DOJ's independent investigation, but DOJ never attempts to show why it would "tend to reveal some secret aspect of the grand jury's

investigation[.]" *Senate of P.R.*, 823 F.2d at 582. Indeed, this is particularly unlikely given that the Plaintiffs seek this information "for its intrinsic value in furtherance of a lawful investigation," instead of "to learn what took place before the grand jury." *Boehm v. FBI*, 983 F. Supp. 2d 154, 159 (D.D.C. 2013) (cleaned up).

In sum, DOJ properly invoked Exemption 3 in combination with Rule 6(e) to withhold grand jury subpoenas for documents or testimony. However, it falls well short of its burden to show that the responses to those subpoenas or Boeing's other compliance communications were appropriately withheld. Accordingly, the Court will grant in part and deny in part both motions as to the records withheld under Exemption 3.[6]

**B. Exemption 4**

Next, the Department invoked Exemption 4 to withhold (1) information provided by Boeing during the criminal investigation related to the company's internal operations, compliance programs, and business strategy, and (2) information of three other business entities that Boeing had provided to DOJ as proposed administrators for the compensation fund. Herrington Decl. ¶ 17–18. The Plaintiffs argue that DOJ has not demonstrated that the withheld information is commercial or confidential, or that reasonably foreseeable harm would result from disclosure. *See* Mot. Summ. J. 13–14; Reply 6–8. The Court largely agrees with the Plaintiffs.

Exemption 4 shields from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). For non-trade-secret information, an agency must show that the information is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential" to withhold it. *Pub. Citizen Health*

[6] For records withheld under Exemption 3, DOJ need not prove that harm would foreseeably result from disclosure. *See* 5 U.S.C. § 552(a)(8)(B).

*Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). And the agency may only withhold the information if it "reasonably foresees that disclosure would harm an interest protected by" Exemption 4. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I). No one disputes that the withheld records were obtained from a person, so the Court focuses on the first and third requirements.

**1. Commercial or Financial**

The D.C. Circuit has "consistently held that the terms 'commercial' and 'financial' in the exemption should be given their ordinary meanings." *Pub. Citizen*, 704 F.2d at 1290. Therefore, "information is commercial if it pertains to the exchange of goods or services or the making of a profit." *Citizens for Resp. & Ethics in Washington (CREW) v. DOJ*, 58 F.4th 1255, 1263 (D.C. Cir. 2023). This often includes information that "actually reveal[s] basic commercial operations, such as sales statistics, profits and losses, and inventories[.]" *Pub. Citizen*, 704 F.2d at 1290. However, Exemption 4 does not protect information that "only tenuously or indirectly concerns the exchange of goods or services or the making of a profit." *CREW*, 58 F.4th at 1265.

Here, DOJ argues that Boeing had a commercial interest in information related to "the company's internal operations, compliance programs, and business strategy." Cross-Mot. 8. For example, some of the compliance presentations that Boeing submitted to DOJ "contained information regarding the company's business activities and resources." *Id.* As DOJ's declarant explained, "Boeing has a commercial interest in the information related to their business activities, as establishing and maintaining these activities requires a substantial dedication of company resources." Herrington Decl. ¶ 18.

Though bordering on conclusory, the Court finds this explanation sufficient. Business strategies, activities, and resources are within the ambit of "commercial" or "financial" activities as those terms are commonly understood. *See Pub. Citizen*, 704 F.2d at 1290. And courts in this

District have made clear that "information about the way the companies implement their compliance programs" can be "sufficiently 'instrumental' to [] companies' operations to qualify as commercial.'" *100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115, 137 (D.D.C. 2017) (cleaned up). In addition, the three proposed third-party administrators likely had a similar commercial interest in their own credentials and information.

The Plaintiffs make two arguments in response. First, they argue that after extensive investigations and reporting, the commercial details in the records have likely already been publicized. Mot. Summ. J. 13; Reply 7. On this point, the D.C. Circuit has indeed held "that the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" *Davis v. DOJ*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983)). However, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to *specific information* in the public domain that appears to duplicate that being withheld." *Afshar*, 702 F.2d at 1130 (emphasis added). The Plaintiffs here point to a handful of news articles detailing the "financial strategies and technical details producing the plane crashes." Mot. Summ. J. 13; Reply 7. But beyond this speculation, they offer no specific information as to where in the public domain the withheld information—such as Boeing's compliance presentations—may be found. Therefore, their argument under the public domain doctrine falls short.

Second, the Plaintiffs point out that "the information is likely to be commercially obsolete" because Boeing already began rewriting its software and updating the designs of its aircraft in response to the crashes. Mot. Summ. J. 14. However, DOJ withheld documents relating to a broader set of commercial activities, such as Boeing's "internal operations, compliance programs, and business strategy[.]" Herrington Decl. ¶ 18. Furthermore, just because a company makes

changes to a product over time does not mean that older information is necessarily obsolete. In other words, beyond speculation about the outdated commercial value of the withheld records, the Plaintiffs cannot point to sufficient "contrary evidence in the record" or "evidence of agency bad faith" that is necessary to upset the claims in the Department's affidavit. *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

**2. Confidential**

The Supreme Court established the test for confidentiality under Exemption 4 in *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433 (2019). The Court considered two conditions that might be required. *Id.* One condition which "has to be" met is that the information "is customarily kept private, or at least closely held, by the person imparting it." *Id.* at 434. The Court also considered a second condition—whether "the party receiving it provides some assurance that it will remain secret"—but found "no need to resolve" whether this latter condition was necessary in that case. *Id.* at 434–35; *see also CREW*, 58 F.4th at 1269 (explaining that the D.C. Circuit has also not determined whether the second condition is mandatory). So "the current law of the D.C. Circuit . . . is that information is confidential under Exemption 4 if it is of a kind that would customarily not be released to the public by the person or entity from whom it was obtained." *Gandhi v. Ctrs. for Medicare & Medicaid Servs.*, 665 F. Supp. 3d 49, 55 (D.D.C. 2023) (cleaned up). That said, courts in this District have considered assurances of secrecy in evaluating the customs and practice of the submitting party. *See, e.g.*, *Humane Soc'y Int'l v. U.S. Fish & Wildlife Serv.*, No. 16-cv-720, 2021 WL 1197726, at *5 & n.4 (D.D.C. Mar. 29, 2021) (collecting cases for the proposition that "even after [*Argus Leader*], courts in this District have continued to recognize that the circumstances under which a company submits information to the government bears on whether that information remains confidential").

Here, DOJ fails on the first mandatory condition. DOJ's declarant provides a total of two sentences to sustain the agency's burden on the confidential nature of the withheld records. First, the declaration states that "[t]he information contained in the withheld records is 'confidential' because Boeing would not customarily release this information publicly." Herrington Decl. ¶ 19. But this merely recites the relevant legal standard without providing additional details. *See Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998) (explaining that affidavits that are "conclusory [or] merely reciting statutory standards" cannot meet the agency's burden on summary judgment). Moreover, it lacks any explanation about how DOJ's declarant, the Deputy Chief of the Criminal Division's FOIA office, has personal knowledge of Boeing's confidentiality practices. *See Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (explaining that the "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented"). Next, DOJ's declarant notes that Boeing "stated in letters to the Department that it was requesting confidential treatment of these records under the FOIA and marked the majority of the records provided as confidential for purposes of FOIA." Herrington Decl. ¶ 19. But "these confidential treatment requests," while "indicative of [Boeing's] actual and customary treatment, . . . are not, without more, sufficient grounds to conclude that the agency met its burden under FOIA." *WP Co. LLC v. Nat'l Highway Traffic Safety Admin.*, No. 24-cv-1353, 2026 WL 820742, at *4 (D.D.C. Mar. 25, 2026) (emphasis omitted); *see also Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F. Supp. 3d 109, 130 (D.D.C. 2015) ("A company's request for confidential treatment is not a sufficient basis for withholding information."). And DOJ goes no further to explain Boeing's practices. In addition, DOJ makes no attempt whatsoever to explain whether and how the three third party

entities customarily keep their information private. As a result, DOJ fails to meet its burden to prove confidentiality under Exemption 4.[7]

### 3. Foreseeable Harm

Turning to foreseeable harm, an agency may "withhold information . . . only if [it] reasonably foresees that disclosure would harm an interest protected by an exemption[.]" 5 U.S.C. § 552(a)(8)(A)(i)(I). To do so, it must "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (internal quotation marks omitted). Importantly, it "cannot rely on mere speculative or abstract fears . . . [n]or may the government meet its burden with generalized assertions." *Id.* (cleaned up). In this way, "the foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Id.*

Particularly after *Argus Leader*, "few courts have considered what burden the foreseeable-harm requirement imposes on agencies that seek to withhold records pursuant to Exemption 4." *Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 123 (D.D.C. 2023). Still, an "emerging consensus of judges in this district" have "generally agreed that agencies may meet their burden by demonstrating how disclosure of the requested information would harm the submitter's economic or business interests," *WP Co. LLC*, 2026 WL 820742, at *11 (cleaned up);

[7] The second (possibly inessential) condition identified in *Argus Leader* considers whether an agency provided some assurance to the submitting party that its records would remain secret. 588 U.S. at 434. DOJ appears to have met this condition for some (but not all) of the withheld records. For the six records withheld in full under Exemption 4, which included "commercial information provided by Boeing to demonstrate compliance with the [deferred prosecution agreement]," DOJ explains that they were provided "under assurance of confidentiality." Herrington Decl. ¶ 36. However, for the remaining records withheld in part under Exemption 4, even though Boeing *asked* to keep the records confidential, DOJ never claims that it agreed to do so. In any event, because DOJ could not clear the first condition of *Argus Leader*, the second condition has no impact.

*see also Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 113 (D.D.C. 2019) ("To meet this requirement, the defendants must explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption, such as by causing 'genuine harm to [the submitter's] economic or business interests,' and thereby dissuading others from submitting similar information to the government[.]" (quoting *Argus Leader*, 588 U.S. at 441 (Breyer, J., concurring in part and dissenting in part))).

Here, again, DOJ's declaration is scant. It spends one sentence explaining that "[t]he release of information concerning Boeing's internal operations, compliance programs, business strategy, etc. could clearly cause Boeing competitive harm while a lack of trust that the Criminal Division will honor requests of confidentiality could harm the Division's ability to obtain information from businesses and persons in the future." Herrington Decl. ¶ 20. This explanation is too vague. DOJ never attempts to "articulate . . . the nature of the harm," much less link it to the "specific information contained in the material withheld." *Reps. Comm.*, 3 F.4th at 369. In other words, DOJ does not bother to explain *why* release of the specific information withheld would harm the submitter's economic or business interests. For example, DOJ ignores the Plaintiffs' arguments that the withheld information may cause little harm to Boeing's economic or business interests after subsequent public reporting and disclosures. In fact, as noted above, DOJ did not file a reply brief at all. As is the case here, "[t]hough an agency is not required to disclose so much information that it would thwart the purpose of the exemption invoked, summary judgment is inappropriate where the agency provides only conclusory statements and has not satisfied its burden of justifying its withholdings." *Pub. Emps. for Env't Resp. v. Off. of Sci. & Tech. Pol'y*, 825 F. Supp. 2d 104, 111 (D.D.C. 2011) (citations omitted). Thus, even if DOJ had established

that the withheld information was both commercial and confidential, it would fail to establish foreseeable harm.

* * *

DOJ has not carried its burden to show that the withheld information is confidential or that disclosure would cause foreseeable harm. As a result, the Court will deny its summary judgment motion with respect to Exemption 4 and grant the Plaintiffs' motion.

**C. Exemptions 6 and 7(C)**

DOJ next invoked Exemptions 6 and 7(C) to withhold three categories of information: "(1) the names and identifying information of Boeing personnel; (2) contact information for Boeing's outside counsel, including email addresses, as well as office and mobile phone numbers; and (3) contact information of DOJ attorneys." Herrington Decl. ¶ 24. The Court concludes that DOJ properly withheld the first and third categories but not the second.

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C). Because Exemption 7(C) permits the withholding of records "if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a '*clearly* unwarranted' invasion to justify nondisclosure, 'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *ACLU*, 655 F.3d at 6 (quoting *U.S.*

*Dep't of Def. v. FLRA*, 510 U.S. 487, 496 n.6 (1994)). For that reason, when an agency claims that records may be withheld under both exemptions, a court "need only consider whether [the agency] properly invoked Exemption 7(C)." *Id.*

To invoke Exemption 7(C), an agency must meet two requirements. First, it must make a "threshold showing" that the records at issue "were compiled for law enforcement purposes." *Boyd v. Exec. Off. for U.S. Att'ys*, 87 F. Supp. 3d 58, 72 (D.D.C. 2015). When making this showing, "the focus is on how and under what circumstances the requested files were compiled, and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Jefferson v. DOJ., Off. of Pro. Resp.*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (first citing *Weisberg v. DOJ*, 489 F.2d 1195, 1202 (D.C. Cir. 1973); then quoting *Aspin v. Dep't of Def.*, 491 F.2d 24, 27 (D.C. Cir. 1973)).

After clearing this threshold, the agency faces a balancing test. First, a court will consider whether disclosure "would compromise a substantial, as opposed to *de minimis*, privacy interest," because "[i]f no significant privacy interest is implicated . . . FOIA demands disclosure." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). In this context, "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229–30 (D.C. Cir. 2008). Second, assuming that it finds a privacy interest, the court will then "address the question whether the public interest in disclosure outweighs the individual privacy concerns." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002). When considering what constitutes the public interest, the court must assess "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up

to.'" *U.S. Dep't of Def. v. FLRA*, 510 U.S. at 497 (alteration in original) (quoting *DOJ v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).

Here, DOJ explains—and the Plaintiffs do not dispute—that the three categories of records were compiled for "a criminal investigation involving Boeing[.]" Cross-Mot. 11. Therefore, DOJ satisfies the "threshold showing" that the records at issue "were compiled for law enforcement purposes." *Boyd*, 87 F. Supp. 3d at 72. The Court thus proceeds to the balancing test, taking each category of withheld information in turn.

**1. Boeing Personnel**

Starting with the names and identifying information of Boeing personnel, the Court is persuaded that disclosing this information would implicate a significant privacy interest that is not outweighed by the public interest. Boeing personnel have a significant privacy interest in their names and identifying information. As DOJ's declaration explains, "[p]ublic identification of these persons could subject them to harassment and annoyance in the performance of their jobs, as well as their private lives." Herrington Decl. ¶ 25. The D.C. Circuit has agreed on this point, explaining that "[t]here is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm." *Senate of P.R.*, 823 F.2d at 588. Thus, the Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

Despite DOJ's reliance on *SafeCard*, the Plaintiffs do not address it at all. Instead, they point out that "when filing and announcing the Deferred Prosecution Agreement," DOJ "publicly

identif[ied] Boeing's Chief Technical Pilot and single[d] him out as the culprit behind Boeing's fraud." Reply 10. But the Plaintiffs do not explain why DOJ's decision to publicly pursue one investigatory target would diminish the privacy interests of different employees mentioned in law enforcement files.

Meanwhile, on the public interest side of the ledger, the Plaintiffs identify an interest "in knowing whether the government had information that other Boeing employees, including higher-ranking Boeing executives, perpetuated the fraud that ultimately caused 346 people to die in two plane crashes." Reply 10. DOJ goes too far in claiming that "[t]here is no public interest in the withheld information," Cross-Mot. 13, given the well-recognized "public interest in shedding light on agency investigatory procedures," *PETA*, 745 F.3d at 543. Even so, courts in this District have "consistently found that interest, without more, insufficient to justify disclosure when balanced against the substantial privacy interests weighing against revealing the targets of a law enforcement investigation." *Id.*; *see also Schrecker v. DOJ*, 349 F.3d 657, 666 (D.C. Cir. 2003) (similarly holding that scrutiny of a law enforcement investigation will rarely outweigh a significant privacy interest). And the Plaintiffs must marshal "compelling evidence" that DOJ was "engaged in illegal activity," *SafeCard*, 926 F.2d at 1206, a burden that they do not attempt to meet. Thus, the Court concludes that Exemption 6 and 7(C) protect the names and identifying information of Boeing personnel.

**2. Boeing's Outside Counsel**

Next, DOJ withheld the contact information of Boeing's outside counsel, including email addresses, as well as office and mobile phone numbers. But the Court is not convinced that disclosure of that information would implicate a significant privacy interest. Exemption 7(C) does not apply to "[i]nformation relating to business judgments and relationships . . . even if disclosure

might tarnish someone's professional reputation." *Doe v. FEC*, 920 F.3d 866, 873 (D.C. Cir. 2019). As a result, courts have held that agencies may not withhold the identifying information of outside counsel. *See, e.g.*, *King & Spalding, LLP v. HHS*, 395 F. Supp. 3d 116, 122 (D.D.C. 2019); *Majuc v. DOJ*, No. 18-cv-566, 2022 WL 266700, at *8 (D.D.C. Jan. 28, 2022). Because the contact information of Boeing's outside counsel implicates "no significant privacy interest . . . FOIA demands disclosure." *Horner*, 879 F.2d at 874.

**3. Government Attorneys**

Finally, DOJ withheld the contact information of certain government attorneys. The Court agrees that disclosure of this information is not warranted. Government attorneys do have a privacy interest in their names and contact information. *See Bast v. DOJ*, 665 F.2d 1251, 1255 (D.C. Cir. 1981) (explaining that government officials "do not surrender all rights to personal privacy when they accept a public appointment"); *Rojas-Vega v. ICE*, 302 F. Supp. 3d 300, 309–10 (D.D.C. 2018); *Blakeney v. FBI*, No. 17-cv-2288, 2019 WL 450678, at *5 (D.D.C. Feb. 5, 2019). And importantly, the Plaintiffs fail to identify a cognizable public interest that outweighs these privacy interests. *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004) (explaining that the requester bears the burden of articulating a public interest that warrants invasion of the privacy interests at stake). In this context, "the only relevant public interest" is "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *U.S. Dep't of Def. v. FLRA*, 510 U.S. at 497 (alteration in original) (quoting *DOJ v. Reps. Comm. for Freedom of Press*, 489 U.S. at 773. But the Plaintiffs do not explain why they seek the DOJ attorneys' contact information at all. Therefore, they have not articulated a sufficient public interest to outweigh the government employees' privacy interests.

### 4. Foreseeable Harm

Having found that the identifying and contact information of Boeing personnel and government attorneys fall within the scope of Exemption 7(C), the Court turns to foreseeable harm. Recall that an agency may only withhold information if it "reasonably foresees that disclosure would harm" the privacy interests protected by the relevant exemption. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I). Exemption 7(C) "protect[s] the privacy of individuals identified in certain agency records," *ACLU*, 655 F.3d at 6, so "disclosure of identifying information is a harm in and of itself," such that "an agency need not establish much more than the fact of disclosure to establish foreseeable harm," *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021).

Here, DOJ explains that "[p]ublic identification of [Boeing personnel] could subject them to harassment and annoyance in the performance of their jobs, as well as their private lives." Herrington Decl. ¶ 25. It similarly says that disclosure of government employees' contact information could "subject them to harassment and unwanted publicity," "limit their effectiveness," and "disrupt and impede their official activity." *Id.* ¶ 26. This constitutes sufficient foreseeable harm under Exemption 7(C). *See Ecological Rts.*, 541 F. Supp. 3d at 65 (finding that the agency established foreseeable harm by explaining that disclosing agents' names could expose them to harassment); *Ball v. U.S. Marshals Serv.*, No. 19-cv-1230, 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021) (same).

***

In sum, DOJ properly invoked Exemption 7(C) to withhold the names and identifying information of Boeing personnel and the contact information of DOJ attorneys. As to that information, the Court will grant summary judgment to DOJ and deny summary judgment to the Plaintiffs. However, DOJ may not invoke Exemption 7(C) to withhold the contact information for

Boeing's outside counsel. As to that information, the Court will grant summary judgment to the Plaintiffs and deny summary judgment to DOJ.

### D. Exemption 7(A)

Finally, the Department invoked Exemption 7(A) to withhold additional records in full and in part which "pertain to the Criminal Division's investigation of Boeing which ultimately led to the parties entering into a [deferred prosecution agreement], and after finding the [agreement] had been breached, the current non-prosecution agreement[.]" Cross-Mot. 16. These documents "consist of a personnel file of a Boeing employee, grand jury materials, Boeing's proposed administrators for the compensation fund, and other records submitted by Boeing to demonstrate compliance in accordance with the prosecution agreements." *Id.* DOJ has failed to show that Exemption 7(A) applies to these records.

Exemption 7(A) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. DOJ*, 218 F.3d 760, 762 (D.C. Cir. 2000). To withhold records under Exemption 7(A), an agency must demonstrate that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted). Courts generally consider: "(1) whether a law enforcement proceeding is

pending or prospective; and (2) whether release of information about it could reasonably be expected to cause some articulable harm." *Kay v. FCC*, 976 F. Supp. 23, 37 (D.D.C. 1997).

Here, the Plaintiffs argue that the records do not relate to a pending or prospective law enforcement proceeding. Alternatively, they argue that disclosure would not cause any articulable harm because Boeing has access to the records and its underlying conduct is already public.

**1. Pending or Prospective Law Enforcement Proceeding**

To properly invoke Exemption 7(A), DOJ must either show that the withheld material "relates to a 'concrete prospective law enforcement proceeding,'" *Carson v. DOJ.*, 631 F.2d 1008, 1018 (D.C. Cir. 1980) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232 (1978)), or specify "that the enforcement proceeding is pending or reasonably anticipated," *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 386 (D.C. Cir. 2007). DOJ's declarant attests that the enforcement proceeding against Boeing "remains active." Herrington Decl. ¶ 30. He explains that "if Boeing fails to abide by its obligations under the [non-prosecution agreement]," DOJ "may prosecute Boeing" for federal criminal violations. *Id.* ¶ 32. That appears to suffice.

The Plaintiffs argue that "[e]specially given the Boeing-protective terms of the Non-Prosecution Agreement," DOJ fails to point to a concrete prospective proceeding. Mot. Summ. J. 11. However, this is "not quite the formidable hurdle" that the Plaintiffs make it out to be: "[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." *Juarez v. DOJ*, 518 F.3d 54, 59 (D.C. Cir. 2008). Because DOJ may bring criminal charges if Boeing is noncompliant with the non-prosecution agreement—an agreement reached in May 2025 that runs for two years, *see* Herrington Decl. ¶¶ 30, 34—DOJ's enforcement proceedings against Boeing remain pending.

### 2. Lack of Articulable Harm

The Plaintiffs next argue that even if enforcement is pending or likely, DOJ fails to show articulable harm because Boeing already has access to the withheld records. The Court agrees.

The D.C. Circuit considered a similar circumstance in *Campbell v. HHS*, where the government invoked Exemption 7(A) to withhold documents Eli Lilly had submitted to the FDA as part of a government investigation. 682 F.2d 256, 258 (D.C. Cir. 1982). In rejecting the withholdings, the Circuit found that the "government's submissions d[id] not explain how information submitted by the company's present and former officers or employees since the FDA began its investigation could reveal the direction of the investigation to Lilly or alert it to anything it d[id] not know already." *Id.* at 260. Because the requester "sought no documents supplied by sources other than Lilly personnel," the Circuit reasoned, disclosure necessarily was unlikely to tip the company off with information they themselves supplied. *Id.*

The same is true here. As the Plaintiffs correctly point out, "[b]ecause the records at issue consist only of communications between DOJ lawyers and Boeing lawyers or representatives, any produced information necessarily will already be in Boeing's possession and hence will not undermine any hypothetical law enforcement proceeding against Boeing." Reply 3; *see also* Mot. Summ. J. 11–12. DOJ responds that "it is a stretch to state that Boeing has access to all the materials that make up the Department's investigatory file," and that "release of that file could under[mine] the Department's ability to bring later charges to enforce the [Boeing non-prosecution agreement]." Cross-Mot. 16. However, the Plaintiffs sought only communications between Boeing and DOJ—not the entire investigative file. At bottom, DOJ "does not explain how its investigation will be impaired by the release of information that the targets of the investigation *already possess*."

*Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs*, 677 F. Supp. 2d 101, 108 (D.D.C. 2009). That dooms DOJ's Exemption 7(A) arguments.

* * *

In sum, DOJ has not carried its burden under Exemption 7(A). Therefore, the Court will deny its motion and grant summary judgment in the Plaintiffs' favor.

**E. Segregability**

FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). An agency can satisfy the segregability analysis by attesting that it conducted a "line-by-line review of each document withheld in full" and determined "that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). To rebut this presumption, a plaintiff must produce a "quantum of evidence," at which point "the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Sussman*, 494 F.3d at 1117. The Court considers segregability for DOJ's withholdings sustained under Exemptions 3, 6, and 7(C).

Starting with the Exemption 6 and 7(C) withholdings, DOJ's declarant explained: "I have conducted a line-by-line review of the records to consider whether any information could be segregated and released without causing a foreseeable harm to the agency and have determined that no further non-exempt information could be segregated for release." Herrington Decl. ¶ 38. In response, the Plaintiffs state that the declaration fails to "explain why especially sensitive

information, such as contact information or truly personal information (if any), cannot be redacted from otherwise responsive records." Reply 11. But the Plaintiffs offer no evidence as to *why* it believes that DOJ's line-by-line review was inadequate. This is not sufficient to disturb the "presumption" that DOJ met its obligation to disclose reasonably segregable information. *Sussman*, 494 F.3d at 1117.

As to the Exemption 3 withholdings, DOJ has provided a *Vaughn* index and "a declaration attesting that the agency released all segregable material." *Jud. Watch, Inc. v. DOJ*, 20 F. Supp. 3d 260, 277 (D.D.C. 2014). For these withholdings, DOJ did not attest to undertaking a line-by-line review of the properly withheld grand jury subpoenas. But DOJ's declarant explained that those documents were "readily identifiable," Herrington Decl. ¶ 38, and the Plaintiffs have not marshalled any evidence to the contrary. So the Court must find in DOJ's favor.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Plaintiffs' motion for summary judgment, ECF No. 34, and the Defendant's cross-motion for summary judgment, ECF No. 35. The Court directs the Parties to meet and confer to discuss how to proceed in light of this Memorandum Opinion. The Parties shall appear for a status conference on October 6, 2026, where they should be prepared to propose next steps.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: September 11, 2026