**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NAOISE CONNOLLY RYAN, *et al.*,<br>*Plaintiffs*,<br>v.<br>DEPARTMENT OF JUSTICE,<br>*Defendant*. | Civil Action No. 23-3815 (SLS)<br>Judge Sparkle L. Sooknanan |

# MEMORANDUM OPINION AND ORDER

In this Freedom of Information Act (FOIA) case, the families of victims of two tragic Boeing 737 MAX aircraft crashes and their counsel seek records related to the crashes and subsequent investigations by the Department of Justice (DOJ). The Court recently resolved the Parties' cross-motions for summary judgment with respect to a small sample of the potentially responsive records. *See Ryan v. DOJ*, No. 23-cv-3815, 2026 WL 2676048 (D.D.C. Sep. 11, 2026); Order, ECF No. 40. DOJ now asks the Court to exercise its discretion to partially reconsider that ruling under Federal Rule of Civil Procedure 54(b). *See* Mot. Reconsideration (Mot.), ECF No. 45. The Court declines to do so.[1]

"Rule 54(b) allows a litigant to move for reconsideration or modification of a district court's interlocutory order disposing of 'fewer than all the claims or the rights and liabilities of fewer than all the parties' 'at any time' before the court's entry of final judgment." *Cobell v. Jewell*, 802 F.3d 12, 19 (D.C. Cir. 2015) (quoting Fed. R. Civ. P. 54(b)). "Motions brought under Rule

[1] DOJ originally also sought an order from the Court staying its deadline to release the documents pending appeal. *See* Mot. at 13–15. But it has since withdrawn that request. *See* Notice of Partial Withdrawal, ECF No. 53.

54(b) may be granted, in the court's discretion, 'as justice requires.'" *Apprio, Inc. v. Zaccari*, No. 18-cv-2180, 2021 WL 4935379, at *1 (D.D.C. Aug. 27, 2021) (quoting *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011)). Courts in this District have interpreted Rule 54(b) to permit reconsideration when the movant shows: "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Jett v. FBI*, No. 14-cv-276, 2016 WL 107912, at *2 (D.D.C. Jan. 8, 2016) (cleaned up); *see also United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017) ("Considerations a court may take into account under this standard include whether the court patently misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." (cleaned up)).

DOJ requests that the Court reconsider its rulings on FOIA Exemptions 3 and 4. DOJ primarily argues that the Court erred in concluding that it improperly invoked those exemptions as to certain categories of records. And DOJ also attaches entirely new declarations that it asks the Court to consider. The Court disagrees that it committed error in its Memorandum Opinion and declines to consider DOJ's new declarations.

Before turning to DOJ's arguments, the Court briefly recounts the relevant procedural history of this case. This case is now almost three years old. The Plaintiffs filed suit in 2023 after receiving no response to their FOIA request for over a year. *See* Compl., ECF No. 1. Then, the Parties spent well over a year having discussions about how to efficiently process the voluminous responsive records. *See* Joint Status Report (July 7, 2025) ¶¶ 1–6, ECF No. 24 (detailing the case's history). Eventually, the Plaintiffs agreed to DOJ's proposal to process a random sample of the

potentially responsive documents to resolve disagreements regarding withholdings. *Id.* ¶ 7; Joint Status Report (Dec. 8, 2025) ¶¶ 14–15, ECF No. 29. The purpose of summary judgment briefing was abundantly clear to the Parties and the Court: to resolve the disagreements about exemptions and apply those decisions globally to the remaining records, which would both reduce DOJ's processing burden and move the aging case forward. Indeed, at a status conference before summary judgment briefing, counsel for the Plaintiffs thought it was "worth making explicit" something that the Parties had previously discussed: "whatever the ruling . . . at a categorical level"—*e.g.*, "'this type of thing is exempt'"—"would then apply, prospectively, to . . . the other responsive documents that fall outside the sample[.]" Tr. at 12:15–20 (Apr. 22, 2026). The Plaintiffs' counsel continued, "obviously, there may be questions of application here and there, but we wouldn't end up doing this anew[.]" *Id.* at 12:20–22. The Court confirmed this with counsel for DOJ:

> THE COURT: [T]o me, the only point of doing this briefing now and having me decide this is if the arguments you have about the exemptions are such that they would apply more globally; I thought that was the point of doing the sample. Is that your understanding as well for the government?
>
> COUNSEL: Yes, Your Honor.

*Id.* at 13:2–8.

With this shared understanding, the Parties proceeded to file and brief cross-motions for summary judgment, which the Court resolved. The Court's Memorandum Opinion did not specifically order the release of the records held to be non-exempt—because it expected that the Parties would meet and confer to determine the details and timing of DOJ's release and the processing of the additional records. But DOJ seemingly changed its mind. Instead of honoring its prior agreement, DOJ declined to turn over the relevant records—and could not even tell the Court how many documents were at issue in light of the ruling. *See* Min. Order (Oct. 7, 2026). The Court thus ordered DOJ to turn over the sample records not protected by the claimed exemptions, *id.*,

setting a disclosure deadline of November 10, 2026, Min. Order (Oct. 13, 2026). That brings us to the instant motion for reconsideration of the Court's Exemption 3 and 4 rulings, which is ripe for review. *See* Opp'n to Mot. (Opp'n), ECF No. 50; Reply, ECF No. 51.

**A. Exemption 3**

The Court's Memorandum Opinion explained why DOJ failed to justify its Exemption 3 withholdings over responses to grand jury subpoenas. *See Ryan*, 2026 WL 2676048, at *3–5. DOJ seeks reconsideration, raising three primary arguments. None provide a basis for reconsideration.

*First*, DOJ argues that the Court "erred in concluding that the government's declaration was too vague without also considering the entries on the accompanying *Vaughn* index, which described the withheld records in a way that showed them to be facially connected to a grand jury." Reply at 2 (citing Mot. at 8–9). To clear up any confusion, the Court reviewed both versions of the *Vaughn* index submitted with the Parties' summary judgment motions. But the document titles say nothing about whether disclosure would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of P.R. v. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987) (cleaned up). As the Court previously explained, it is possible that the withheld "responses could reveal the contents of the subpoena itself, or include protected information such as the 'identities of witnesses or jurors[.]' But DOJ entirely fail[ed] to 'suppl[y] the information a court must have in order to intelligently make that judgment.'" *Ryan*, 2026 WL 2676048, at *4 (first citing *Lopez v. DOJ*, 393 F.3d 1345, 1350 (D.C. Cir. 2005); then quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc); and then quoting *Senate of P.R.*, 823 F.2d at 584); *see also Bagwell v. DOJ*, 588 F. Supp. 3d 58, 69 (D.D.C. 2022) (explaining that even if material is identifiable as being sought by the grand

jury, such as through headings or stamps on its face, "the Department still must demonstrate that disclosure would 'tend to reveal some secret aspect of the grand jury's investigation, including' its 'strategy or direction'" (quoting *Bartko v. DOJ*, 898 F.3d 51, 73 (D.C. Cir. 2018))).

*Second*, DOJ claims that the Plaintiffs conceded any challenge to this category of documents by not making specific arguments until their reply brief. This argument, too, is easily dispensed with. The Plaintiffs' opening motion argued that "[t]he *Vaughn* index does not include sufficient information to evaluate the government's invocation of Exemption 3." Pls.' Mot. Summ. J. at 15, ECF No. 34. Then, with the benefit of DOJ's cross-motion and accompanying declaration, the Plaintiffs expanded on this point in their reply and cross-opposition. *See* Pls.' Mot. Summ. J. Reply at 4–6, ECF No. 38. Without DOJ's briefing and declaration, the Plaintiffs could do no more in their opening brief.[2] More broadly, DOJ ignores that it bears the burden of proving its entitlement to withhold responsive records. It did not do so.[3]

*Finally*, perhaps recognizing that it did not meet its burden the first time around, DOJ asks the Court to consider a supplemental declaration. But DOJ does not claim that the information in

[2] This also undermines DOJ's more specific argument that the Plaintiffs conceded the applicability of Exemption 3 to entry 30. Again, the Plaintiffs' reference in their initial motion to entry 30 came within the broader header that "[t]he *Vaughn* index does not include sufficient information to evaluate the government's invocation of Exemption 3." Pls.' Mot. Summ. J. at 15. And in their reply, the Plaintiffs reiterated that DOJ's conclusory declaration did not justify any of its Exemption 3 withholdings—including as to grand jury subpoena responses such as entry 30. *See* Pls.' Mot. Summ. J. Reply at 4–6 ("Even as to documents produced in response to subpoenas, then, the government 'has failed to meet its burden of demonstrating some nexus between disclosure and revelation of a protected aspect of the grand jury's investigation.'" (quoting *Lopez*, 393 F.3d at 1349)).

[3] The Court notes that DOJ previously faulted the Plaintiffs for even relying on the *Vaughn* index in their summary judgment motion. *See Ryan*, 2026 WL 2676048, at *2 n.4 (explaining the Parties' dispute over the "draft" and "final" *Vaughn* indices, and why the Government's argument "border[ed] on bad faith"). Yet now, DOJ claims that the Plaintiffs conceded any challenge because they did not make specific enough arguments.

this new declaration was previously unavailable. And the Court declines to use Rule 54(b) as a vehicle to permit arguments or evidence that could have been presented earlier in this case. *Cf. Jett*, 2016 WL 107912, at *2 (explaining that the Rule 54(b) standard allows for consideration of "new evidence not previously available" (cleaned up)). The procedural history of this case illustrates why DOJ should not be entitled to another bite at the apple. After roughly two and a half years, DOJ's supporting declaration at summary judgment was conclusory and bare-bones. It offered only that disclosure "could reveal information concerning strategies behind the grand jury investigation," Herrington Decl. ¶ 16, ECF No. 35-2, and it never undertook a line-by-line review of the documents, *id.* ¶ 38. As the Court explained, "almost three years into this case, when processing only a small sample of documents to enable the Court to narrow the disputes between the Parties, DOJ's decision to proceed in this manner [was] disappointing." *Ryan*, 2026 WL 2676048, at *4. Rule 54(b) does not offer a do-over in this context. *See Dynamic Visions, Inc.*, 321 F.R.D. at 17 (explaining that a court may consider a "change in the . . . facts . . . *since the submission of the issue* to the [c]ourt" (emphasis added)); *Freeman v. Giuliani*, No. 21-cv-3354, 2023 WL 11926310, at *1 (D.D.C. June 22, 2023) ("Despite the flexibility allowed under Rule 54(b), given the tax on parties' and judicial resources from revisiting issues already resolved and the concomitant perverse incentive to invite litigation delay by such reconsideration requests, a court should be loathe to grant a motion for reconsideration in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." (cleaned up)).

In sum, none of DOJ's arguments warrant reconsideration of the Court's Exemption 3 ruling on responses to grand jury subpoenas.

**B. Exemption 4**

The Court's Memorandum Opinion also explained why DOJ failed to demonstrate that certain records submitted by Boeing were confidential or that disclosure would cause foreseeable harm. *See Ryan*, 2026 WL 2676048, at *5–7. DOJ offers three arguments for reconsideration, none of which is persuasive.

*First*, DOJ claims that the Court overstated the extent of personal knowledge that a government declarant must possess regarding a company's confidentiality practices. DOJ argues that it met its burden because its declarant "explained that Boeing requested confidential treatment of the documents and specifically marked the majority of them as containing confidential information." Mot. at 11 (citing Herrington Decl. ¶ 19). And it says that "[t]he Court discounted this explanation because the agency declarant did not have 'personal knowledge of Boeing's confidentiality practices.'" Mot. at 11 (quoting *Ryan*, 2026 WL 2676048, at *6). That is not what the Court did.

To begin, the Court noted that "DOJ's declarant provide[d] a total of two sentences to sustain the agency's burden on the confidential nature of the withheld records." *Ryan*, 2026 WL 2676048, at *6. The Court first addressed the statement that "'[t]he information contained in the withheld records is "confidential" because Boeing would not customarily release this information publicly'"—noting that it "merely recite[d] the relevant legal standard without providing additional details" and "lack[ed] any explanation about how DOJ's declarant . . . ha[d] personal knowledge of Boeing's confidentiality practices." *Id.* (quoting Herrington Decl. ¶ 19). Then the Court turned to the second sentence that DOJ raises in reconsideration—"that Boeing 'stated in letters to the Department that it was requesting confidential treatment of these records under the FOIA and marked the majority of the records provided as confidential for purposes of FOIA.'"

*Ryan*, 2026 WL 2676048, at *6 (quoting Herrington Decl. ¶ 19). The Court explained that "these confidential treatment requests, while indicative of Boeing's actual and customary treatment, are not, without more, sufficient grounds to conclude that the agency met its burden under FOIA. And DOJ goes no further to explain Boeing's practices." *Ryan*, 2026 WL 2676048, at *6 (cleaned up).

In seeking reconsideration, DOJ makes no attempt to grapple with this holding, which does not break new ground. *See, e.g.*, *WP Co. LLC v. Nat'l Highway Traffic Safety Admin.*, No. 24-cv-1353, 2026 WL 820742, at *4 (D.D.C. Mar. 25, 2026) ("Confidential treatment requests and subsequent determinations are *indicative* of the entities' actual and customary treatment, but they are not, without more, sufficient grounds to conclude that the agency met its burden under FOIA. Indeed, if the Court were to accept the defendant's argument, any agency could, theoretically, simply hand out promises of confidentiality to individuals who gave information in order to avoid judicial review as to whether a record can be withheld." (cleaned up)). Given this, DOJ has not justified reconsideration of this Court's Exemption 4 holding on confidentiality.

*Second*, DOJ argues that "the Court should have given the government an opportunity to respond to the foreseeable harm arguments raised by the Plaintiffs for the first time in their reply brief." Reply at 4. But DOJ addressed the foreseeable harm requirement in its cross-motion and opposition, as well as in its accompanying declaration. *See* Def.'s Resp. & Cross-Mot. Summ. J. at 9, ECF No. 35; Herrington Decl. ¶ 20. And nothing stopped DOJ from seeking leave to file a reply brief to make any additional arguments. That practice is common, and the Court is certain that DOJ has availed itself of it in other cases.[4] In any event, since DOJ has not met its burden to establish the confidentiality prong of Exemption 4, foreseeable harm is not determinative.

---

[4] DOJ makes much of the fact that the Court did not initially set a deadline for it to reply to the Plaintiffs' opposition to its cross-motion for summary judgment. Mot. at 10 n.1. But at no point did DOJ ask for such a deadline. The Court merely told the Parties that it would not accept

*Finally*, DOJ once again asks the Court to consider a supplemental declaration—this time from a Boeing representative. *See* Mot. at 12–13. Given the posture of this case, the Court concludes that it is not in the interest of justice to permit new submissions from DOJ at the Rule 54(b) stage. Undoubtedly, DOJ could have brought this information to the Court's attention during summary judgment briefing. And Boeing was presumably aware of this litigation well before summary judgment briefing and had ample opportunity to intervene or submit a declaration. *See* Min. Order (Oct. 13, 2026) ("[T]here is no question that Boeing has had plenty of opportunities to protect its rights."). On the other side of the ledger, the Plaintiffs have represented that "the victims' families have a one-time meeting with Boeing's board of directors" in a little over a month, and although the documents "are a tiny fraction of the broader set of responsive documents," "they are likely to be important to the families' preparation for the meeting." Opp'n at 3–4; *see also* Aff. of Naoise Connolly Ryan ¶¶ 5–6, ECF No. 50-1 (statement from Plaintiff who lost her husband in one of the crashes, explaining that "[a]s part of my part my participation in [the upcoming] meeting with the Board of Directors, I would like to have as much information as possible about the 737 MAX crashes and the Justice Department later criminal prosecution . . . . I hope that I can receive information as quickly as possible, so that I can use it to prepare for my participation in the Board of Directors meeting"); Aff. of Javier de Luis ¶ 6, ECF No. 50-2 (similar statement further explaining that "these documents are essential to understanding more about [my sister's] death and the subsequent (non) prosecution"); Decl. Paul G. Cassell ¶¶ 21–22, ECF No. 50-3 (describing the meeting as a "once-in-a-lifetime opportunity for the victims' families"

---

simultaneous summary judgment briefs and wanted one Party to move first. Tr. at 10:15–17 (Apr. 22, 2026). DOJ was free to request a briefing deadline at the outset or after reviewing the Plaintiffs' reply.

and explaining the need to review as many important documents as possible in advance). Given these equities, the Court declines to consider DOJ's new declaration.

* * *

In the end, DOJ is not entitled to relief under Rule 54(b), which is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (cleaned up). DOJ has not shown an intervening change in the law, the discovery of new evidence not previously available, or a clear error in the Court's Memorandum Opinion. Rather, DOJ simply wants another shot at summary judgment briefing with the benefit of new and more robust declarations. Given the history of this case and DOJ's conduct, the interests of justice weigh against reconsideration. "The sure and speedy administration of justice requires no less." *Singh*, 383 F. Supp. 2d at 102.

Accordingly, the Court **DENIES** the Motion for Partial Reconsideration, ECF No. 45.

**SO ORDERED.**

SPARKLE L. SOOKNANAN
United States District Judge

Date: November 9, 2026